UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

OSHA BOSTICK o/b/o D.B.,

      Plaintiff,

v.                                     Case No. 8:19-cv-585-T-MAP

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____/

## **ORDER**

This is an appeal of the administrative denial of a child's application for disability insurance benefits (DIB).[1]  *See* 42 U.S.C. § 405(g).  On behalf of her minor son, Plaintiff argues that this case should be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g), because the Appeals Council (AC) erred by denying review of the ALJ's decision.  After considering Plaintiff's arguments (doc. 25), Defendant's response (doc. 26), and the administrative record (doc. 15), I find the Commissioner's decision is supported by substantial evidence.  I affirm.

    *A.  Background*

D.B. was born on July 3, 2007, and was eight years old on his alleged onset date of October 1, 2015 (the date of his application). (R. 37)  Plaintiff claims her son is disabled due to attention deficit hyperactivity disorder (ADHD) and a learning disorder.  The ALJ found these impairments were severe but did not meet or medically equal a listed impairment and did not functionally equal a listed impairment.  The ALJ denied Plaintiff's claim for disability.

---

[1]  The parties have consented to my jurisdiction under 28 U.S.C. § 636(c).

Plaintiff submitted additional evidence to the AC after the ALJ's August 22, 2018, decision: treatment records and progress notes from Northside Mental Health Center dated September 5, 20, 25, and 27, 2018, October 11, 2018, and November 26, 2018. (R. 11-30)  The AC incorporated the additional evidence into the administrative record, yet denied Plaintiff's request for review on January 11, 2019.  Plaintiff, having exhausted her administrative remedies, filed this action.

Meanwhile, on October 22, 2018, two months after the ALJ's denial and with her appeal to the AC pending, Plaintiff filed a new application for benefits on D.B.'s behalf.  The Commissioner granted this second application and awarded Plaintiff benefits as of October 22, 2018 (the date of the second application) (*see* doc. 25, ex. 1).  Although Plaintiff does not request a remand under sentence six of 42 U.S.C. § 405(g), Plaintiff attaches the Commissioner's favorable decision to her brief, arguing "the fact that the claimant was awarded benefits shortly after the unfavorable decision should be given considerable weight." (Doc. 25 at 9).

B.  *Standard of Review*

Regarding applications for childhood disability benefits, the Social Security Act provides:

> An individual under the age of 18 shall be considered disabled ... if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).  The Commissioner has issued regulations explaining how this provision is implemented in determining if a child is disabled.  *See* 20 C.F.R. § 416.924.

Similar to the approach taken with adults, the Commissioner assesses child disability claims under a sequential analysis.  20 C.F.R. § 416.924(a).  The first step is to determine whether the child is actually working at substantial gainful activity.  20 C.F.R. § 416.924(b).  If not, the

2

second step asks whether the child has a severe impairment.  20 C.F.R. § 416.924(c).  If he does

not, the child is considered not disabled.  *Id.*  If there is a severe impairment, the third, and final,

step in the analysis is to determine whether the child has an impairment that meets, medically

equals, or functionally equals, a set of criteria in the Listing of Impairments in Appendix 1

("listings") .  20 C.F.R. § 416.924(d).

For a child's impairment to functionally equal the listings, the child's impairment must

result in a "marked" impairment in two domains of functioning or an "extreme" limitation in one

domain.  20 C.F.R. § 416.926a.  A child has a "marked" limitation in a domain when his

impairment(s) interferes seriously with his ability to independently initiate, sustain, or complete

activities. 20 C.F.R. § 416.926a(e)(2).  A "marked" limitation is more than moderate, but less than

extreme.  *Id.*  A child has an "extreme" limitation when the child's impairment interferes very

seriously with his ability to initiate, and the limitation is "more than marked."  20 C.F.R. §

416.926a(e)(3).  An extreme limitation is assigned only to the worst limitations, but does not

necessarily mean a total lack or loss of ability to function.  *Id.*  If the child functionally equals the

listings, then he is deemed disabled.  20 C.F.R. § 416.924(d)(1).  If he does not, then he will be

found not disabled. 20 C.F.R. § 416.924(d)(2).  In assessing functional equivalence, the fact finder

considers the child's functioning in six domains: 1) acquiring and using information; 2) attending

and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating

objects; 5) caring for himself; and 6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those

findings.  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The ALJ's

factual findings are conclusive if "substantial evidence consisting of relevant evidence as a

reasonable person would accept as adequate to support a conclusion exists."  *Keeton v. Dep't of*

*Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted).  The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal."  *Keeton*, 21 F.3d at 1066 (citations omitted).

    *C.  Discussion*

        *1.  Appeals Council's consideration of new and material evidence*

    The sole issue on appeal is whether the AC properly reviewed Plaintiff's mental health treatment records from Northside Mental Health Center, dated September 5, 2018 (approximately two weeks after the ALJ's decision), through November 26, 2018.  Plaintiff submitted these records to the AC.  The AC incorporated them into the administrative record yet denied review of the ALJ's decision.  Plaintiff contends the Northside Mental Health records relate back to the period at issue (October 1, 2015, through August 22, 2018), because they "clarify the severity of the claimant's condition rather than demonstrating a new or worsening condition." (Doc. 25 at 9). The Commissioner argues that the additional evidence is not chronologically relevant because it post-dates the ALJ's decision and, in any event, it does not render the ALJ's decision unsupported by substantial evidence.  I agree with the Commissioner.

    A claimant may present evidence at each stage of the administrative process.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).  If a claimant presents evidence after the ALJ's decision, the Appeals Council must consider it if it is new, material, and chronologically relevant.  20 C.F.R. § 416.1470(b); *see also Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1320 (11th Cir. 2015).  Evidence is material if a reasonably possibility exists that the

evidence would change the administrative result. *Washington*, 806 F.3d at 1321. New evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 416.1470(b). The Appeals Council must grant the petition for review if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence," including the new evidence. *Ingram*, 496 F.3d at 1261 (quotation marks omitted); *see also Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 800-01 (11th Cir. 2008) (*per curiam*). In other words, a claimant seeking remand under sentence four of 42 U.S.C. § 405(g) "must show, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole." *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 902 (11th Cir. 2013).

Here, the AC stated, "[t]he [ALJ] decided your case through August 22, 2018. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before August 22, 2018." (R. 2) The AC did not explain why the new evidence did not provide a basis to change the ALJ's decision, just that it "does not relate" to the relevant time period. (*Id*.) The AC is required to consider new evidence, but it is not required to explain its decision when denying review. *See* 20 C.F.R. §§ 416.1467, 416.1470; *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) ("because a reviewing court must evaluate the claimant's evidence anew, the AC is not required to provide a thorough explanation when denying review").

Evidence may be chronologically relevant even if it post-dates the ALJ's decision. For instance, in *Washington*, 806 F.3d at 1322, the Eleventh Circuit considered an examining psychologist's opinions to be chronologically relevant "even though [the psychologist] examined [the claimant approximately seven] months after the ALJ's decision." The psychologist had

reviewed the claimant's treatment records from the period before the ALJ's decision; the claimant had told the psychologist he had suffered from the conditions "throughout his life" (which obviously included the relevant time period); and there was "no assertion or evidence" that the claimant's condition worsened "in the period following the ALJ's decision." *Id.*; *see also Wordsman v. Berryhill*, 2019 WL 1349821, at *4-5 (M.D. Fla. Mar. 26, 2019) (remanding to the Commissioner for reconsideration of evidence submitted to the AC for the first time; evidence that post-dated relevant period by four months).

On the other hand, in *Stone v. Commissioner of Social Security Administration*, 658 F. App'x 551, 555 (11th Cir. 2016), the Eleventh Circuit found the circumstances "significantly different" from those present in *Washington*. The records in *Stone* "demonstrate[d] a worsening" of the relevant symptoms after the ALJ's decision. *Id.* And in *Hargress v. Commissioner of Social Security Administration*, 883 F.3d 1302, 1309-10 (11th Cir. 2018), the Eleventh Circuit found that progress notes post-dating the ALJ's decision did not "relate to the period before the ALJ's . . . decision" and "nothing in these new medical records indicates the doctors considered [the claimant's] past medical records or that the information in them relates to the period at issue, which materially distinguishes this case from *Washington*." *Id.*; *see also Smith*, 272 F. App'x at 801-02 (affirming district court's decision; new evidence submitted to AC did "not establish a likelihood that the ALJ would have reached a different result," in part because they post-dated the ALJ's decision by between four and eight months). Evidence that a condition the ALJ previously considered has deteriorated may entitle a claimant to benefits under a new application, but it is not probative of whether a person is disabled during the specific period under review. *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999); *see also Griffin v. Comm'r of Soc. Sec.*, 723 F. App'x 855, 858 (11th Cir. 2018) (finding MRI report prepared four months after ALJ's decision not

chronologically relevant or material as there was no indication report related back to the relevant time period).

I find this case more like *Stone* and *Hargress* and less like *Washington*. Amber Holbin, a mental health counselor for Northside, met with Plaintiff and D.B. for the first time on September 20, 2018, a month after the ALJ's decision. (R. 19)  Over three therapy sessions, Plaintiff detailed D.B.'s traumatic childhood:  His father had kidnapped him and his brother when he was a baby after attacking his mom in a Walmart parking lot.  Police found the children hours later in an abandoned car in the woods. (R. 19, 29)  Then, about a year before his first session with Ms. Holbin, D.B. was in his mom's car.  His dad was outside.  While D.B. watched, his dad tied a rope around one of the car's tires then around his neck and implored D.B.'s mom to drive off. (*Id.*)  And in early September 2018, shortly before his first Northside appointment, D.B. was on the phone with his dad when his dad reportedly told him, "I should kill myself so you see what it's like to not have me anymore, since you all don't need me." (R. 19)  D.B. does not live with his dad; he sees him on the weekends for a few hours, always in a public place. (R. 29)

On September 27, 2018, D.B. was evaluated by Northside psychiatrist Neil Thierry, M.D. (R. 13)  Plaintiff told Dr. Thierry that D.B. sees angels and demons who tell him what to do.  His behavior at home and school (he was in the fifth grade) was getting worse, according to Plaintiff: he apparently was suspended every day of his fifth-grade year to that point, once for lighting a computer on fire. (R. 27, 29)  His behavior was impulsive and aggressive.  He threw a container of gasoline on another kid's face. (R. 29)  Dr. Thierry observed the Plaintiff had facial tics and "abnormal grimaces" along with a flat affect. (R. 13)  D.B.'s mom said he sometimes left home without shoes.  He stayed up all night talking to himself or imaginary people.  "He does not appear to have any remorse and he appears to not take responsibility for any of his actions," Dr. Thierry

stated.  (*Id*.)  D.B. has an Individualized Education Plan (IEP) in place at his elementary school. Despite failing grade levels, the school had given him a "principal's promotion" each year to stay on track. (R. 29)  Plaintiff reported that D.B.'s behavior was "getting worse" and she "wanted to nip it in the bud before middle school." (*Id*.) Dr. Thierry diagnosed D.B. with schizophrenia (a new diagnosis) and prescribed Seroquel, an antipsychotic medication. (R. 14-15)

Dr. Theirry and Ms. Holbin did not indicate whether they reviewed Plaintiff's past medical records, and neither of them treated Plaintiff during the relevant time period.  To that point, the only mental health treatment Plaintiff had during the relevant time period was a Cymbalta prescription for ADHD.  Northside's records relay Plaintiff's statements that D.B.'s behavior was getting worse.  Dr. Thierry's schizophrenia diagnosis was new – Plaintiff's original application listed ADHD and a learning disorder as his disabling impairments.  Under these circumstances – where Plaintiff's additional evidence pertains to treatment obtained after the ALJ's decision, there is no evidence the providers were supplementing prior treatment records or even reviewed prior treatment records, and the treatment providers offered a new diagnosis – the AC did not err in finding the records do not relate to the time period at issue.  *See Hargress*, 883 F.3d at 1309-10; *Stone*, 658 F. App'x at 555.

D.B. has endured a heartbreaking series of struggles over which he has had no control.  At this point in my analysis, I reiterate that my job is to determine whether the administrative record contains substantial evidence to support the agency's decision.  *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.*  I may not reweigh the evidence or substitute my own judgment for that of the ALJ, even if I find the evidence

preponderates against the decision.  *See Bloodsworth*, 703 F.2d at 1239.  Considering this low threshold, there is substantial evidentiary support for the agency's decision.

The analysis could stop here, as Plaintiff must show that the new evidence is both temporally relevant *and* material (*i.e.*, that there is a reasonable possibility the new evidence would have changed the administrative outcome).  Nonetheless, I address Plaintiff's argument that the Northside treatment records *must* be material, because the Commissioner approved Plaintiff's second application for benefits, finding D.B. disabled as of October 22, 2018, just two months after the ALJ's decision in this case.[2]

"[A] later award of benefits does not legally impact the review of a prior application for benefits."  *Stokes v. Astrue*, No. 8:08-cv-1657-T-23HTS, 2009 WL 2216785, at *2 (M.D. Fla. July 23, 2009) (citation and quotations omitted).  The Commissioner's decision to grant Plaintiff's second application is not in the administrative record but is attached to Plaintiff's brief.  In it, the Commissioner found Plaintiff disabled as of October 22, 2018, a later time period than that at issue in the ALJ's decision here.  This new award "is not evidence of the plaintiff's condition on or before the date of the ALJ's decision."  *Id.*, quoting *Howard v. Astrue*, No. 07-144-GWU, 2008 WL 108776, at *1 (E.D. Ky. Jan. 9, 2008).  Of course, Plaintiff did not "suddenly become disabled the day after the ALJ's decision."  *Howard*, 2008 WL 108776, at *1.  But "the subsequent award of benefits says nothing about the plaintiff's condition during the entire period being considered

---

[2] Notably, Plaintiff does not make the argument for remand under sentence six of 42 U.S.C. § 405(g), based on the subsequent award of benefits.  Under sentence six, "the federal court [has] the power to remand the application of benefits to the Commissioner for the taking of additional evidence upon a showing 'that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'"  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (quoting 42 U.S.C. § 405(g)). Plaintiff alludes to evidence in the Commissioner's possession that supports D.B.'s second benefits application and is also material to the first application (doc. 25 at 8).  But Plaintiff states she does not know what that evidence is, and she proceeds under sentence four rather than sentence six.

under the plaintiff's current application." *Id.*   In other words, an award of benefits recognizing disability beginning one date does not compel a result for the earlier period at issue here.  *Stokes*, 2009 WL 2216785, at *2 (summarizing various approaches of the effect of a subsequent disability determination on a prior application and finding "it is clear the mere fact of an award of benefits" does not compel a finding of disability for an earlier time period); *see also Miller v. Colvin*, No. 3:13-cv-391-J-JRK, 2014 WL 4794692, at *6 (M.D. Fla. Sept. 25, 2014) ("The fact that Plaintiff was subsequently awarded benefits for the day after the period at issue here is of no moment.").

Indeed, in denying Plaintiff's claim in this case, the ALJ stated that, during the relevant time period, D.B. "did not receive mental health counseling because of difficulty accessing those services." (R. 38)  Nonetheless, the ALJ considered Plaintiff's testimony that D.B. sees demons and has behavioral issues. (*Id.*) At the time of the ALJ's decision, D.B. was on ADHD medication but reported "no sleep disturbances, hallucinations, behavioral problems or other significant psychiatric symptomology." (*Id.*)  Against this backdrop, the additional records demonstrate a clear worsening of symptoms after the date of the ALJ's decision.  The AC did not err; remand is not required.

*D.  Conclusion*

For the reasons stated above, it is ORDERED:

    (1)  The Commissioner's decision is AFFIRMED; and

    (2)  The Clerk of Court is directed to enter judgment for the Defendant and close the case.

DONE and ORDERED in Tampa, Florida on May 12, 2020.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE